IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-CV-73-BO

| | |
|---|---|
| WILLIE R. ETHERIDGE SEAFOOD CO., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE HONORABLE PENNY PRITZKER, SECRETARY OF COMMERCE, and DR. KATHRYN SULLIVAN, ADMINISTRATOR OF THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

This cause comes before the Court on defendants' motion for partial dismissal. A hearing was held before the undersigned on July 14, 2015, at Edenton, North Carolina and the motion is ripe for ruling. For the reasons discussed below, defendants' motion is granted and counts two through five of plaintiffs' complaint are hereby dismissed.

## BACKGROUND

Plaintiffs are eighteen fishermen or fishing companies operating out of Wanchese, Hatteras, Manteo, and Nags Head, North Carolina as well as New York and Florida. Plaintiffs filed this action on December 30, 2014, to challenge the regulations implementing Amendment 7 to the Consolidated Atlantic Migratory Species Fishery Management Plan, which was published as a Final Rule on December 2, 2014.

The Atlantic Highly Migratory Fishery includes the harvest and landings of primarily swordfish and tuna species and has been undergoing extensive rebuilding efforts since the 1990s. Plaintiffs are pelagic longline fishermen; Bluefin tuna may not be targeted with pelagic longlines, but such vessels must hold permits for Bluefin tuna because they are common bycatch. Amendment 7 seeks to minimize the number of Bluefin as bycatch and dead discards in the pelagic longline fishery while providing a flexible quota system.

Plaintiffs allege that Amendment 7 threatens the economic viability of their business by implementing onerous monitoring requirements and bycatch quotas. Plaintiffs contend that with the new restrictions imposed by Amendment 7 the overall swordfish yield in the fishery will be lower while the cost of compliance will reduce profitability such that many vessels will be unable to continue to fish. Plaintiffs further contend that Amendment 7's Individual Bluefin Quota gives preferential treatment to two groups, is neither fair nor equitable, and disenfranchises longtime fishermen who have borne the largest brunt of conservation efforts.

Plaintiffs allege five claims in their complaint: count one, violation of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801 *et seq.*; count two, failure to comply with the Administrative Procedures Act (APA) 5 U.S.C. §§ 551, *et seq.* and 701, *et seq.*; count three, deprivation of plaintiffs' property and liberty interests without due process or just compensation, U.S. Const. Amend. V; count four, violation of the Regulatory Flexibility Act (RFA) by failing to complete an adequate final regulatory flexibility analysis, 5 U.S.C. §§ 601, *et seq.*; and count five, failure to comply with the National Environmental Protection Act (NEPA) and to assess alternatives for mitigating the negative impacts of Amendment 7 on the human environment, 42 U.S.C. §§ 4321, *et seq.*

Defendants seek dismissal of claims two through five for failure to state a claim and lack of subject matter jurisdiction. Defendants argue that plaintiffs cannot allege a stand-alone claim for violating the APA, that plaintiffs lack a property interest in their fishing permits and therefore cannot state a Fifth Amendment claim, that plaintiffs' RFA allegations are threadbare and fail to state a claim, and that plaintiffs are not within NEPA's zone of interests.[1]

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations

---

[1] The Court would note that at the hearing before the undersigned counsel for plaintiffs all but conceded that count one, their Manguson-Stevens Act claim, is their strongest and only outcome determinative claim.

3

do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 550 U.S. at 570.

I.     Count Two

The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA does not itself create any substantive rights, and "[t]here is no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the legal basis for the complaint." *El Rescate Leg. Services, Inc. v. Exec. Off. of Immig. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) (internal alterations, quotation, and citation omitted). Count two of plaintiffs' complaint alleges only that defendants have violated the APA, and absent reference to a relevant statute it is properly dismissed.

II.    Count Three

The Fifth Amendment to the Unites States Constitution provides that no person shall be deprived of "life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. V. Plaintiffs claim in count three that Amendment 7 takes certain property rights in the nature of fishing permits and imposes upon fishermen excessive cost and expense which deprive them of their property and liberty without due process of law or just compensation.[2] In order to state a claim for a due process violation a plaintiff must have a legitimate property interest which is protected by the Fifth Amendment. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Courts applying "traditional notions of

---

[2] Although based on the language of their claim plaintiffs appear to be asserting a takings clause as well as due process clause violation, plaintiffs did not respond to defendants argument that they have failed to state a takings clause claim and thus the Court considers such a claim waived.

4

property and existing rules and understandings" have concluded, however, that a fishing permit does not confer a legitimate property interest. *Conti v. United States*, 291 F.3d 1334, 1341 (Fed. Cir. 2002) (permit issued by Department of Commerce to harvest swordfish in Atlantic Swordfish Fishery does not confer a property interest); *see also Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1374 (Fed. Cir. 2004) (mackerel and herring commercial fishing permit does not confer a property interest for purposes of the Fifth Amendment). Plaintiffs in their response have not proffered any basis which would cause this Court to be unpersuaded that defendants' Bluefin tuna permits similarly do not confer any property interest, and thus their Fifth Amendment claim fails.

III. Count Four

The Regulatory Flexibility Act (RFA) provides that if a rule "will have a significant economic impact on a substantial number of small entities" a regulatory flexibility analysis must be conducted. 5 U.S.C. § 605(b). Plaintiffs allege that by failing to complete an initial regulatory flexibility analysis (IFRA) defendants were unable to complete an adequate final regulatory flexibility analysis (FRFA) as required by the RFA. Beyond alleging the elements of a cause of action under the RFA, plaintiffs have failed to plead any facts which would support such a claim. Moreover, the failure to complete an IFRA is not subject to judicial review. *See* 5 U.S.C. § 611(c); *Allied Loc. and Regl. Mfrs. Caucus v. United States E.P.A.*, 215 F.3d 61, 79 (D.C. Cir. 2000). This claim is therefore properly dismissed.

IV. Count Five

The National Environmental Protection Act provides for no private right of action, requiring parties who seek to bring claims under NEPA to file suit under the APA. *Town of Stratford, Connecticut v. F.A.A.*, 285 F.3d 84, 88 (D.C. Cir. 2002). In order to bring suit

5

challenging an agency action under the APA, a plaintiff must demonstrate that he is "adversely affected or aggrieved . . . within the meaning of a relevant statute." 5 U.S.C. § 702; *see also Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) ("Whether a plaintiff comes within "the 'zone of interests'" is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."); *Sierra Club v. E.P.A.*, 755 F.3d 968, 976 (D.C. Cir. 2014) (the Supreme Court in *Lexmark* "clarified that "'prudential standing' is a misnomer," and that the "zone of interests" inquiry is in fact a question of whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue," not a question of standing.") (citation omitted). NEPA's zone of interest has been generally defined as environmental protection. Indeed, "NEPA declares a national policy of protecting and promoting environmental quality," *Hughes River Watershed Conservancy v. Glickman*, 81 F.3d 437, 443 (4th Cir. 1996), and its "purpose is to protect the environment, not the economic interest of those adversely affected by agency decisions." *Western Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 902-03 (9th Cir. 1996).

Here, plaintiffs do not invoke the APA within their NEPA claim. Further, they allege only economic and cultural harms. For example, plaintiffs allege that defendants' actions will permanently and unlawfully modify a traditional way of life for the sake of an agency's regulatory convenience and that Amendment 7 creates an unduly burdensome system whose costs will eventually bankrupt the fleet. While a plaintiff can fall within NEPA's zone of interests "even if his or her interest is primarily economic," this is only true where a plaintiff "also alleges an environmental interest or economic injuries that are 'causally related to an act within NEPA's embrace.'" *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.*

*v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005) (citation omitted). Though plaintiffs argue in opposition that burdens on the fishing industry will have adverse impacts on the health of Americans and the quality and nature of coastal development, plaintiffs' claim fails to sufficiently allege any economic harm that is *causally* related to protection of the environment and therefore falls within NEPA's embrace. *See e.g. id.*, 415 F.3d at 1103 (matters solely of human health fall outside NEPA's zone of interests). For this reason, the Court finds that plaintiffs are not within NEPA's zone of interests and that count five thus fails to state a claim.

## CONCLUSION

Accordingly, for the reasons discussed above, defendants' motion for partial dismissal [DE 37] is GRANTED. Counts two through five of plaintiffs' complaint are dismissed. Pursuant to the Court's order of February 23, 2015, the parties are DIRECTED to submit a proposed summary judgment briefing schedule within ten (10) days of the date of entry of this order.

SO ORDERED, this __16__ day of July, 2015.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE